IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| RICHARD W. MANN, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | 1:11CV516 |
| EUROPEAN AMERICAN INVESTMENT BANK AG, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). (Docket Entry 16.) Plaintiff has filed a response in opposition to the motion. (Docket Entry 21.) For the following reasons, the court will recommend that Defendant's motion to dismiss be granted.

### I. FACTUAL BACKGROUND

Plaintiff filed the Complaint in this action on June 28, 2011, alleging causes of action against Defendant European American Investment Bank AG ("Euram Bank") for breach of contract, negligence, fraud, breach of the fiduciary duty of good faith and fair dealing, breach of contract constituting professional malpractice, breach of warranty, and fraudulent inducement. (*See*, generally, Compl., Docket Entry 1.) As alleged by Plaintiff, in 2002 he engaged in a "Creative Financial Solution" transaction (*i.e.*, tax shelter) designed and promoted by Euram Bank, called the "Euram Rowan Strategy." Plaintiff alleges he paid

Defendant $875,000 "to engage in the strategy." (*Id.* ¶ 6.)[1] According to the allegations of the Complaint, Defendant "provided a cashless paper entry loan of $7 million to allow Plaintiff to increase the size of the transaction to the targeted loan amount of $17 million." (*Id.* ¶ 9.) Ultimately, the transaction was disallowed by the Internal Revenue Service and Plaintiff was assessed tax penalties in the amount of $911,869.00. (*Id.* ¶ 10.)

Euram Bank, the only Defendant named in the Complaint, is an Austrian company with its principal place of business in Vienna, Austria. (*See* Affidavit of Senta Penner ¶ 2, Docket Entry 17-1.) According to Penner, Euram Bank's former Chief Financial Officer and Managing Board Member, Euram Bank does not conduct or solicit business in the United States, has no affiliates in the United States, is not incorporated or licensed to business in the United States, has no offices or bank accounts in the United States, owns or leases no property in the United States, and pays no taxes in or to the United States. (*Id.* ¶¶ 4-8.)

Plaintiff alleges that the primary contact between Euram Bank and this forum was the loan obtained by Plaintiff from Euram Bank. (Compl. ¶ 9; *see* Declaration of Antonio E. Lewis, Ex. A, Loan Agreement, Docket Entry 18-1.) In his affidavit, Plaintiff averred that he was contacted at his home in North Carolina by Euram Bank with information regarding the Rowan tax strategy. (Pl.'s Aff. ¶ 2, Docket Entry 21-7.) Plaintiff also alleges that "Defendant used Pali Capital to assist in the U.S. marketing efforts" and that "Tom Seck,

---

[1] For the purposes of this motion, it is not necessary to go into detail about the tax strategy Plaintiff alleges he employed. As described by Plaintiff in his affidavit, the tax strategy "followed scripted steps to generate a deductible loss for the participants," Euram "provided the foreign currency option trading to produce approximately $17.5 million USD in deductible trading loss," and the tax strategy that he paid $875,000 to engage in did not work. (Pl.'s Aff. ¶¶ 5-7, Docket Entry 21-7.)

2

(located in Charlotte, North Carolina) worked in design, marketing and implementation of tax strategies, including the Euram Rowan strategy." (Compl. ¶ 12.)

## II. DISCUSSION

A. Jurisdiction

On a Rule 12(b)(2) motion, a plaintiff has the burden "to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, where the court does not conduct an evidentiary hearing and relies only on the pleadings and affidavits, a plaintiff need only make a *prima facie* showing of jurisdiction. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). The district court, in considering such a motion, must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Once a defendant has provided specific denials contrary to a plaintiff's assertion of facts supporting jurisdiction, a plaintiff's "bare allegations that the defendants had had significant contacts with the [forum] state" are insufficient to establish jurisdiction by a preponderance of the evidence. *Id.* at 402-03.

The court must perform a two-step analysis when determining if it has personal jurisdiction over a non-resident defendant. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Id.* North Carolina's long-arm statute states that the state has jurisdiction

3

over a defendant "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1-75.4(1)(d) (2013). North Carolina's long-arm statute "has been interpreted to extend to the outer limits allowed by the Due Process Clause." *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 379 (4th Cir. 2001). "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Second, the court must determine that the exercise of jurisdiction complies with the requirements of the Due Process Clause. "Due process requires that in order to subject a defendant to personal jurisdiction, the defendant must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe*, 326 U.S. at 316). "These contacts must be of such a level that they are equivalent to physical presence in the forum state so that it would be fair to hale a defendant into court in the forum based on any claim raised against the defendant no matter where the facts underlying the claim arose." *Lab. Corp. of Am. Holdings v. Schumann*, 474 F. Supp. 2d 758, 761 (M.D.N.C. 2006) (citation omitted).

Since *International Shoe* was decided, courts have distinguished between general and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). Specific, or case-linked, jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy' . . . that takes place in the forum State and is therefore

4

subject to the State's regulation." *Id.* (quoting Von Mehren & Truatman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1996)). General jurisdiction, on the other hand, may be asserted over a corporation of another state "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citing *Int'l Shoe*, 326 U.S. at 317); *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Here, Plaintiff has conceded that there is no basis for this court to exercise general jurisdiction. (Pl.'s Mem. at 16-17.) The Court, therefore, will limit its discussion to the issue of specific jurisdiction.

B. Specific Jurisdiction

If a cause of action arises out of or relates to a defendant's contacts with the forum State, the court can exercise specific jurisdiction. A defendant has minimum contacts with a jurisdiction so as to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990); *see also Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To determine the existence of specific jurisdiction, then, a court considers: "(1) the extent to which the defendant 'purposely availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS*

*Scan*, 293 F.3d at 712. When determining (1) whether a defendant has purposely availed itself of the privilege of doing business in the forum state, courts consider a variety of factors, including:

> [1] whether the defendant maintains offices or agents in the forum state; [2] whether the defendant owns property in the forum state; [3] whether the defendant reached into the forum state to solicit or initiate business; [4] whether the defendant deliberately engaged in significant or long-term business activities in the forum state; [5] whether the parties contractually agreed that the law of the forum state would govern disputes; [6] whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; [7] the nature, quality and extent of the parties' communications about the business being transacted; and [8] whether the performance of the contractual duties was to occur within the forum.

*Consulting Eng'rs Corp. v. Geometric Software Solutions, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). "If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the court] move on to a consideration of prongs two and three." *Sloane v. Laliberte*, No. 1:08CV381, 2011 WL 2938117, at *7 (M.D.N.C. July 19, 2011) (quoting *Consulting Eng'rs*, 561 F.3d at 278).

The Fourth Circuit has further explained that the second prong of the analysis "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79. The third prong requires consideration of additional factors to ensure the appropriateness of the forum:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in

6

obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* at 279.

*Purposeful availment*

Euram Bank argues in its brief that none of the "purposeful availment" factors identified by the Fourth Circuit support a finding of personal jurisdiction in this case. (Def.'s Mem. at 9, Docket Entry 17.) In support of its motion, Euram Bank submitted affidavits demonstrating that Euram Bank is an Austrian company which has never maintained a presence in North Carolina – no offices, no property, no employees, no agents, no contracts and no advertising. (Penner Aff. ¶¶ 4-8.) Additionally, Euram Bank, through Penner, states that it "does not provide any kind of tax advice and is prohibited by Austrian law from doing so." (*Id.* ¶ 3.) In a responding affidavit, in support of specific jurisdiction, Plaintiff asserts that "[w]ithout any effort on [his] part, [he] was contacted at [his] home in North Carolina regarding the Rowan tax strategy." (Pl.'s Mem. Opp. Mot. Dismiss, Aff. of Richard Mann (hereinafter "Pl.'s Aff."), Docket Entry 21-7.) However, Plaintiff, in a loan request letter to Euram Bank dated November 20, 2002, stated that he had "not been previously contacted, approached, or solicited by [Euram Bank] or any of [its] representatives or affiliates in respect of the Loan Request but have made this request independently." (Loan Request Letter from Mann, Lewis Decl. Ex. B, Docket Entry 18-2.) Also in this letter, in which Plaintiff calls himself "a sophisticated investor," he states that he has "not received nor relied upon any representation, warranty, assurance or guarantee from [Euram Bank] or any of [its] representatives or affiliates in making the Loan Request and no advice has been sought or proffered by Euram Bank on or in relation to the same." (*Id.*)

7

Even if this Court were to not consider this letter, written by Plaintiff, it is clear that Plaintiff's claims do not arise out of the Loan Agreement. Instead, Plaintiff's allegations all assert that Euram Bank acted as an advisor to Plaintiff and that bad advice he received resulted in his tax liability. Moreover, Plaintiff himself acknowledges in his memorandum opposing the motion to dismiss that he "was damaged by the tax strategy and not specifically by the Loan." (Pl.'s Mem. at 19.) If, by his own admission, the Loan Agreement and corresponding options transactions are not the basis for Plaintiff's claim, it follows that specific jurisdiction cannot derive from the Loan Agreement and options transactions.

As noted by Defendant, the evidence of the Loan Agreement and options transactions do not establish that Euram Bank knew of or had any involvement in tax advice. Plaintiff does not dispute Defendant's assertion that it was prohibited under Austrian law from rendering tax advice. Moreover, the documents submitted by Plaintiff simply do not support his assertion that Defendant purposefully availed itself of this forum such as to provide a basis for the exercise of personal jurisdiction. For instance, in Attachment II, labeled by Plaintiff as "Marketing Materials Delivered to Plaintiff in North Carolina," Plaintiff puts forward a "schematic overview of the Rowan strategy." (Pl.'s Mem. at 7.) With the exception of a photocopy of a business card of Thomas D. Seck, listing a North Carolina address, none of the other charts, diagrams and other materials mentions North Carolina and in fact there is no context given for the documents or the information contained therein. Plaintiff also submitted copies of multiple transaction sheets and confirmations. (Pl.'s Mem., Attachment I, Docket Entry 21-1 pp. 1-36.) These options transactions simply do not support, or suggest in any way, that the transactions were based

on any tax strategy recommended by, or promoted by, Euram Bank. As noted by Penner in his second affidavit, Plaintiff's investment advisors created the options term sheets and sent them to Euram Bank; the options were "drafted under the industry standard agreements created by the International Swaps and Derivatives Association ("ISDA")." (2d Penner Aff. ¶¶ 11-13, Docket Entry 24-1.) According to Penner, "Euram Bank's sole role in the options transaction was to execute and book the contracts." (*Id.* ¶ 12.)

The business card, as mentioned, is a photocopy, and identifies Thomas Seck as the National Director, Client Services, for "Euram Structured Products, a Division of the American Investment Group." Nowhere does it indicate that Seck is affiliated with, or acting on behalf of, Euram Bank, the defendant here. Plaintiff himself appears to concede this fact, alleging that Seck was acting not on behalf of Euram Bank but for other entities. Penner's affidavit clearly states that "Thomas Seck was never a 'marketing representative' of Euram Bank . . . nor did he ever act in any capacity on behalf of Euram Bank." (2d Penner Aff. ¶ 8, Docket Entry 24-1.) In Penner's first affidavit, he states that Defendant Euram Bank is not affiliated with Pali Capital or any entity in the Euram Group. (Penner Aff. ¶ 12.)[2] Plaintiff simply makes many assertions about different entities, but fails to offer anything more than his own conclusory allegations that Euram Bank acted as an advisor to

---

[2] Plaintiff's weak attempt to satisfy its burden to establish specific jurisdiction by "piercing the corporate veil," raised for the first time not in the Complaint but in his opposing Memorandum, is unavailing. (Pl.'s Mem. at 16.) Plaintiff has not met the standard for piercing the corporate veil, nor has he properly pled such. *See Glenn v. Wagner*, 313 N.C. 450, 329 S.E.2d 326, 330 (1985); *see also Richmond v. Indalex Inc.*, 308 F.Supp.2d 648. 658 (M.D.N.C. 2004). Plaintiff has not presented any evidence, such as significant degree of control, that would suggest that any other individuals or entities, including Thomas Seck and Pali Capital, were instrumentalities of Euram Bank.

Plaintiff or committed any acts which would give rise to a cause of action against Euram Bank.

Plaintiff cannot rely on his own conclusory allegations to establish personal jurisdiction. *Carefirst*, 334 F.3d at 402-403. Plaintiff's own letter acknowledges that he affirmatively reached out to Euram Bank. Additionally, Defendant offered specific affidavits demonstrating that Euram Bank had neither conducted business in this forum nor purposefully reached out to Plaintiff in North Carolina. As such, Plaintiff has not met his burden of proving that Defendant purposefully availed itself of the privilege of doing business in North Carolina so as to form the basis of this court's exercise of personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that the motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Docket Entry 16) be **GRANTED** and the action be **DISMISSED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 24, 2014